**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SIMONE LINDSEY,<br><br>                     Petitioner,<br><br>                     v.<br><br>THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al.,<br><br>                     Respondents. | Civil Action No. 23-23287 (KMW)<br><br>**OPINION** |

**WILLIAMS**, District Judge:

This matter comes before the Court on Petitioner Simone Lindsey's petition for a writ of habeas corpus. (ECF No. 1.) Following an order to answer, Respondents filed a response to the petition (ECF No. 12), to which Petitioner did not timely reply. (ECF Docket Sheet.) Also before the Court is Respondents' motion to seal portions of the record containing the victim's medical records (ECF No. 14), which Petitioner opposed only to the extent that she not be barred from viewing the documents. (*See* ECF No. 16.) Having reviewed the motion, having considered the privacy interests involved in the victim's medical records, the lack of public interest in those records, the fact that the records were sealed in state court, and Petitioner's lack of opposition to the documents being kept from public view so long as she is able to access them, the motion to seal is granted. For the following reasons, however, Petitioner's habeas petition is denied and Petitioner is denied a certificate of appealability.

**I.    BACKGROUND**

In the opinion affirming the denial of Petitioner's PCR petition, the Superior Court of New Jersey Appellate Division summarized the factual background of this matter as follows:

> In June 2016, [Petitioner] was indicted on charges of first-degree murder[;] first-degree aggravated manslaughter[;] and third-degree abandonment, neglect of an elderly or disabled adult[.] [Petitioner]'s victim was her developmentally delayed adult stepdaughter, Lenyse.
>
> [Petitioner]'s charges arose as a result of her January 26, 2016[,] decision not to bring Lenyse to an emergency room for immediate treatment after being told by an urgent care physician to do so. That same day, Lenyse's doctor documented that Lenyse had a "potentially life[-]threatening condition" and instructed [Petitioner] to take Lenyse to an emergency room "NOW for further evaluation and treatment." The document also stated that Lenyse was "not well cared for and need[ed] further evaluation and hospital admission." Despite the instruction [Petitioner] received from Lenyse's doctor, [Petitioner] waited three more days to take Lenyse to the hospital, by which time Lenyse had fallen into a semi-conscious state. Lenyse died later that day.
>
> In May 2017, [Petitioner] pleaded guilty to first-degree aggravated manslaughter, in exchange for the state's recommendation of a twenty-year prison term, subject to the No Early Release Act[,] and the dismissal of the remaining charges. During her plea colloquy, [Petitioner] testified she chose to plead guilty to the first-degree offense because she was guilty, her counsel reviewed the plea form with her, and she was "pleased" with his services. [Petitioner] also stated she understood that by pleading guilty, she was waiving her right to trial and had she proceeded to trial and been convicted, she faced up to thirty years in prison on the aggravated manslaughter charge. She also testified she was "facing life" in prison if convicted "on the entire indictment." Further, [Petitioner] stated she was aware she would serve a twenty-year NERA term if the judge sentenced her in accordance with the plea agreement.
>
> During her plea colloquy, [Petitioner] admitted Lenyse's urgent care doctor told her on January 26, 2016[,] that [Petitioner] should "[g]o to the emergency room now" with Lenyse and by "failing to take [her] to the hospital on January 26[], when that was recommended by the doctor, . . . [Petitioner] evidenced extreme indifference to the value of human life." [Petitioner] also admitted she did not take Lenyse to the emergency room until three days after she was instructed to do so. [Petitioner]'s counsel also stated during

2

the plea hearing that "the record should reflect . . . that according to the medical examiner, Lenyse . . . died from starvation."[1]

At [Petitioner]'s June 2017 sentencing, [Petitioner] chose not to speak on her own behalf. Defense counsel did not argue in favor of any mitigating factors. However, the judge independently conducted an aggravating and mitigating factor analysis and found aggravating factors one (the offense was committed in an especially heinous, cruel, or depraved manner), three (risk of reoffense), six (criminal history), and nine (need to deter)[.] She also analyzed and discussed various mitigating factors before finding none applied. In addressing mitigating factor two . . . (defendant did not contemplate the offending conduct would cause or threaten serious harm), the judge concluded "there[ is] no indication that [Petitioner] did not contemplate that she would cause serious harm." Additionally, the judge found mitigating factor four . . . (substantial grounds existed tending to excuse or justify the defendant's conduct, though failing to establish a defense), did not apply, stating "[t]here's no grounds, let alone, substantial grounds for excusing or justifying the [Petitioner]'s actions." Before imposing a twenty-year NERA sentence consistent with the plea agreement, the judge also found the aggravating factors "clearly and convincingly outweigh[ed] the lack of mitigating factors."

In January 2018, [Petitioner] appealed from her sentence, arguing "the judge erred . . . in finding aggravating factor [three]." [The Appellate Division] . . . affirmed the sentence, holding it was "not manifestly excessive or unduly punitive and [did not constitute an abuse of discretion." . . .

[Petitioner] sought PCR relief[.] . . . arguing, in part, plea counsel was ineffective for failing to argue in favor of mitigating factors two and four at sentencing.

The same judge who presided over [Petitioner]'s plea and sentencing heard arguments on [Petitioner]'s PCR petition on June 19, 2020. She denied the petition the same day, finding [Petitioner] failed to establish a prima facie case of ineffective assistance of counsel and was not entitled to an evidentiary hearing.

The judge explained that "[e]ven if defense counsel at sentencing had argued for mitigating factors two and four[,] . . . this court would not have found such mitigating factors." She added "[i]n fact, this court specifically rejected all mitigating factors,

---

[1] "According to the State, Lenyse was five feet tall and weighed only sixty-two pounds when she died." (ECF No. 12-31 at 4 n. 1.)

3

> including mitigating factors two and four." Further, the judge stated
> that had plea counsel argued in favor of mitigating factors two and
> four, it would not "have changed [her] mind as to whether or not
> [Petitioner] should be sentenced in accordance with the plea
> agreement." Moreover, the judge found [Petitioner] provided "an
> adequate factual basis" for her plea, the plea agreement was fair,
> [Petitioner] was sentenced "in accordance with the plea agreement,"
> and the "sentence was upheld by the Appellate Division."

(ECF No. 12-31 at 1-6.)

Petitioner appealed the denial of her PCR petition, but the Appellate Division affirmed. (*Id.*) In so doing, the Appellate Division found that while plea counsel's performance at sentencing "was deficient for failing to argue in favor of any mitigating factors," she "was not prejudiced" as "the judge independently assessed and rejected numerous statutory mitigating factors, including the two mitigating factors now raised by [Petitioner]" and rejected them. (*Id.* at 11-12.)

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta[,]" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. DISCUSSION

In her habeas petition, Petitioner raises a single claim: that her defense counsel was ineffective at sentencing when he failed to argue for a lower sentence at sentencing, and specifically failed to argue mitigating factors related to Petitioner's failure to contemplate that she would cause serious harm, and that there were grounds to excuse or justify her conduct. The standard applicable to claims of ineffective assistance of counsel is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also*

5

> *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

6

In this matter, the Appellate Division rejected these claims, finding that although counsel was deficient in failing to vigorously argue on Petitioner's behalf at sentencing, she was not prejudiced by this failing as the trial judge independently analyzed and rejected the exact mitigating factors that Petitioner suggests counsel should have presented at sentencing and rejected them. Indeed, as the Appellate Division noted, the same judge conducted Petitioner's PCR proceedings, again explicitly rejected those factors on the facts of Petitioner's case and specifically found that, had counsel argued in support of those mitigating factors, the court would have rejected that argument and issued the same sentence.

The Appellate Division's ruling was neither contrary to nor an unreasonable application of *Strickland*. The Court need not guess what would have occurred had counsel raised the arguments Petitioner now desires at sentencing, the sentencing judge herself has already stated she would have rejected those arguments had they been raised, and the same sentence would have been issued had counsel taken the actions Petitioner now suggests. That conclusion is eminently reasonable. The facts of this case, as Petitioner herself admitted in pleading guilty, indicate that she was expressly told that the victim, who was in her care, was in immediate danger and needed to be taken to the emergency room, Petitioner refused to do as directed for three days, and the victim ultimately died. Considering the otherwise abysmal state in which Petitioner had kept the victim, and the clear depraved indifference to the victim's life indicated by Petitioner's decision not to take her to the emergency room for several days, no reasonable judge would have concluded that Petitioner did not contemplate that her actions could have caused serious harm to the victim, and likewise no reasonable judge would have found grounds tending to excuse or justify her behavior. Petitioner was clearly not prejudiced by defense counsel's failings in light of the sentencing judge's explicit consideration and rejection of the two asserted mitigating factors, and the fact that the sentencing judge also held that the same sentence would have been issued in accordance with

7

the plea agreement had counsel raised these arguments at sentencing. Petitioner's ineffective assistance claim is thus clearly without merit, and her habeas petition is denied.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of her state court conviction unless she has "made a substantial showing of the denial of a constitutional right." "[A petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude [that] the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's ineffective assistance claim is clearly without merit for the reasons set forth above, she has failed to make a substantial showing of a denial of a constitutional right, and her petition is not adequate to receive encouragement to proceed further. Therefore, this Court denies Petitioner a certificate of appealability.

## V. CONCLUSION

In conclusion, Petitioner's habeas petition (ECF No. 1) is **DENIED**, Petitioner is **DENIED** a certificate of appealability, and Respondents' motion to seal the victim's medical records (ECF No. 14) is **GRANTED**. An order consistent with this opinion shall be entered.

Hon. Karen M. Williams,
United States District Judge

8